<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

April 22, 2022

Dashawn Duncan
Register No. 73463050
FCI Gilmer, P.O. Box 6000
Glenville, WV 26351
*Pro Se Defendant*

Blake Coppotelli, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

### <u>LETTER OPINION FILED WITH THE CLERK OF THE COURT</u>

    **Re:**    *United States v. Dashawn Duncan*, **Criminal Action No. 21-187 (SDW)**

Litigants:

    Before this Court are Defendant Dashawn Duncan's ("Defendant") Motions for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E. 82, 83.) This Court, having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motions.

### <u>DISCUSSION</u>

A.

    Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

    (A) [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative

rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1). As such, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. First, "a defendant seeking a reduced sentence must ask the [Bureau of Prisons ("BOP")] to do so on his or her behalf," and either "wait thirty days for the BOP to respond" or "exhaust all available administrative appeals after receiving an adverse decision." *United States v. McDonald*, Crim. No. 09-556, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Then, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).

B.

On March 4, 2021, Defendant pleaded guilty to a charge of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1344 and 1349. (*See* D.E. 68, 70.) On July 28, 2021, this Court sentenced Defendant to 24 months of imprisonment and five years of supervised release, and also ordered Defendant to pay restitution. (*See* D.E. 78, 80.) Defendant is currently serving his sentence at Federal Correctional Institution Gilmer ("FCI Gilmer") in Glenville, West Virginia. (*See* D.E. 82 at 1; Govt. Opp. Br. at 2.) His full term of imprisonment will expire on January 17, 2023, but if he receives the full amount of good-time credit, he is projected to be released on October 1, 2022. (Govt. Opp. Br. at 2.)

Notably, on September 17, 2021, the BOP offered Defendant a COVID-19 vaccine, but he refused it. (*See id.*; Govt. Ex. A at 32.) On January 4, 2022, Defendant filed a *pro se* Motion for

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A). "[T]he policy statement is not binding on prisoner-initiated motions," but its "descriptions of extraordinary and compelling circumstances can 'guide discretion without being conclusive.'" *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) (quoting *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

2

Compassionate Release. (D.E. 82.) On January 11, 2022, the Office of the Federal Public Defender for the District of New Jersey informed this Court that it had opted not to file an appearance in this matter.[2] The Government submitted its opposition brief directly to this Court on February 1, 2022, noting that there is no record that Defendant filed an administrative request for release with the BOP. (*See* Govt. Opp. Br. at 2, 8.) On February 15, 2022, Defendant filed a second, substantively identical Motion for Compassionate Release, which this Court construes as a reply brief. (D.E. 83.)

C.

A District Court may only grant a motion for reduction of sentence under the FSA if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This is a statutory requirement that this Court may not waive. *See Raia*, 954 F.3d at 597; *Epstein*, 2020 WL 1808616, at *2. Here, there is no record that Defendant exhausted his administrative remedies, and Defendant does not allege that he did so. Accordingly, this Court may not consider the merits of his motions at this time, and they will be denied.

Even if Defendant's motions were procedurally proper, this Court would still deny compassionate release. Defendant is 28 years old and alleges that he has experienced headaches, irregular heartbeats, hot flashes, loss of appetite, and night shivers. (*See* D.E. 82 at 2; D.E. 83 at 2; Gov. Ex. A at 1.) Although this Court is sympathetic to Defendant's concerns, they do not amount to "compelling and extraordinary reasons" that justify early release. *Epstein*, 2020 WL 1808616, at *2. Defendant's medical records do not corroborate his alleged symptoms, and his alleged symptoms are not ones that the Centers for Disease Control and Prevention (CDC) identify as increasing the risk of severe illness from COVID-19. (*See* Govt. Ex. A); CDC, *People with Certain Medical Conditions* (last updated Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant's allegation that he "ha[s] been doing time [i]n fear th[at] . . . [he] will die," (D.E. 82 at 2; D.E. 83 at 2), is undercut by his refusal to receive a COVID-19 vaccination. *See United States v. Brinson*, Crim. No. 19-153, 2021 WL 2451970, at *2 (D.N.J. June 16, 2021) ("Defendant's refusal to engage in basic self-care undercuts his argument that compassionate release is required to protect his health and well-being.") (citing cases); *see also United States v. Bonilla*, Crim. No. 20-83, 2021 WL 3634181, at *2 (D.N.J. Aug 17, 2021) ("[S]ince the COVID-19 vaccine has become widely available in recent months, courts have held that an inmate who refuses the vaccine may not continue to argue for early released based on an underlying health condition that increases his risk for severe coronavirus illness."); *United States v. Fitzpatrick*, Crim. No. 19-357, 2021 WL 2201683, at *4 (D.N.J. May 28, 2021) (finding that "Defendant ha[d] not met his burden as to extraordinary and

---

[2] Defendant's motions ask this Court to appoint "an attorney that can help" him. (D.E. 82 at 2; D.E. 83 at 2.) "In determining whether to appoint counsel in compassionate release cases, [a] court[] must first determine whether the defendant's claim 'has some merit in fact and law.'" *United States v. Gonzalez*, Crim. No. 02-446-01, 2021 WL 1088258, at *4 (E.D. Pa. Mar. 22, 2021) (quoting *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993)). If it does, the court must consider six factors set forth by the Third Circuit in *Tabron*. *See id.* This Court need not reach the second step here, as Defendant did not exhaust his administrative remedies. His Motions for Compassionate Release are therefore legally meritless for the reasons discussed in this Letter Opinion.

3

compelling circumstances" because he "declined to be vaccinated," demonstrating that he had "voluntarily foregone an opportunity for self-care offered by the BOP" (citing cases)).

Finally, even if Defendant had exhausted his administrative remedies and otherwise established extraordinary and compelling reasons for release, this Court would still deny his motions because the applicable sentencing factors under 18 U.S.C. § 3553(a) weigh against release. *See United States v. Horvath,* Crim. No. 15-400, 2020 WL 7074379, at *1, *3–4 (D.N.J. Dec. 3, 2020) (concluding that, while defendant's hypertension and other health issues constituted an "extraordinary and compelling" reason for release, the sentencing factors weighed against compassionate release). Defendant actively participated in, and financially benefitted from, a complex scheme involving more than $400,000 in losses and at least five other co-conspirators. (*See* Govt. Opp. Br. at 12; D.E. 73 (U.S. Probation Office's Presentence Report ("PSR")) ¶¶ 20–23, 28–29, 41–43.)[3] He has a history of recidivism, including prior convictions for assault and theft. (*See* Govt. Opp. Br. at 12; PSR ¶¶ 76–77.) Thus, a reduced sentence here would not "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," or "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2). This Court will therefore deny Defendant's motions for compassionate release.[4,5]

## **CONCLUSION**

For the foregoing reasons, Defendant's motions are **DENIED**. An appropriate order follows.

                                                                      /s/ Susan D. Wigenton
                                                        **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:      Parties

---

[3] The scheme involved stealing credit cards and blank checks from United States Postal Service; activating the stolen credit cards; posing as bank customers and calling banks to determine the customers' account balances before engaging in fraudulent transactions; recruiting bank account holders to facilitate the blank check scheme; and manually entering the amounts of the checks or altering their dates, payees, or amounts before deposit. (*See* Gov. Opp. Br. at 12; PSR ¶¶ 20–23, 28–29, 41–43.)

[4] Defendant also claims that the "[e]xtensive precautions" taken at FCI Gilmer have been unsuccessful for the inmates. (D.E. 82 at 2; D.E. 83 at 1–2.) Defendant's allegation is unsupported as FCI Gilmer currently has only one COVID-19 case among inmates. *See* Federal Bureau of Prisons, *COVID-19 Coronavirus* (last updated Apr. 22, 2022), *www.bop.gov/coronavirus/.*

[5] "To the extent that [Defendant] request[s] a transition to home confinement, the Bureau of Prisons has the sole authority to place a prisoner in home confinement." *United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)).